NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0484n.06

No. 08-3753

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jul 13, 2009**

LEONARD GREEN, Clerk

VALLEY CITY STEEL, LLC,

 Plaintiff-Appellee,

  v.

LIVERPOOL COIL PROCESSING, INC.,

 Defendant,

  and

VCS PROPERTIES LLC, SHILOH CORPORATION,
SHILOH INDUSTRIES, INC.,

 Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

BEFORE: SILER, COOK, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Following an asset purchase agreement and a subsequent bankruptcy filing, plaintiff sought to recover funds paid in the course of a transaction that it now considers to be a constructive fraudulent transfer. A jury empaneled by the United States District Court for the Northern District of Ohio found in favor of plaintiff and awarded damages. Defendants were denied judgment as a matter of law and now appeal that denial. Because plaintiff failed to present any evidence on a

necessary statutory element of fraudulent transfer, we vacate and remand for entry of judgment in favor of defendants.

I.

The parties are all involved in the steel business. The present dispute began when plaintiff Valley City Steel, LLC ("VCS"), a steel processing facility, filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code. On July 13, 2004, VCS, as debtor-in-possession, filed a complaint alleging constructive fraudulent transfer against defendants in the United States Bankruptcy Court for the Northern District of Ohio. On August 2, 2005, the United States District Court for the Northern District of Ohio granted a motion pursuant to 28 U.S.C. § 157(d) to withdraw the referral to the bankruptcy court. The district court denied defendants' motion for summary judgment, and the case proceeded to a jury trial. The defendants are Shiloh Industries, Inc., Shiloh Corporation, Shiloh Automotive, Inc. (now known as Shiloh Industries, Inc. Wellington Stamping Division), Liverpool Coil Processing, Inc., and VCS Properties LLC.

The relationship among the parties and other companies relevant to this litigation is complex. Shiloh Corporation is a wholly-owned subsidiary of Shiloh Industries, Inc. Valley City Steel Company (not to be confused with plaintiff Valley City Steel, LLC) was also a wholly-owned subsidiary of Shiloh Industries, Inc. which became VCS Properties LLC following a statutory merger, although Shiloh Industries remained the sole member.

Patrick James, a man of Indian descent, was the sole owner of Viking Steel LLC.[1] James sought to purchase certain assets from Valley City Steel Company and formed Valley City Steel-7779 LLC as a vehicle for doing so. Valley City Steel-7779 LLC later changed its name to Valley City Steel, LLC – plaintiff in this case. Viking Steel contributed $200,000 as initial capitalization for VCS. Ultimately, VCS entered into an Asset Purchase Agreement with VCS Properties LLC whereby VCS "generally acquired substantially all of the personal property and some intangible assets" of VCS Properties LLC, "other than Excluded Assets as defined in the Asset Purchase Agreement [] subject only to Permitted Encumbrances as defined in the Asset Purchase Agreement." VCS, as part of the Asset Purchase Agreement, also agreed to assume certain liabilities to trade creditors and employees, including certain pension obligations.

As part of VCS's asset purchase, VCS Properties LLC entered into a Membership Interest Subscription Agreement in which it received a 49% membership interest in VCS, and Viking Steel retained ownership of the remaining 51%. In consideration for the 49% membership interest, VCS Properties LLC contributed "[t]hat portion of the Purchased Assets (as defined in the Asset Purchase Agreement) whose value is greater than the purchase price therefore as set forth in the Asset Purchase Agreement." VCS Properties LLC valued its contribution as $12,000,000. The Asset Purchase Agreement was consummated on July 31, 2001.

---

[1]James's ethnicity is relevant because his participation allowed the new venture to qualify as a "minority business enterprise" with General Motors, Ford, and Chrysler.

On the same day, VCS obtained loans from Comerica Bank to finance the cash portion of its acquired assets. The Comerica loan was secured by a mortgage, and Comerica obtained liens on VCS assets and a personal guarantee from James. VCS also entered into a lease with VCS Properties LLC to rent the real estate upon which VCS operated.

VCS was in default on its loan agreement with Comerica by April 2002 and was in bankruptcy proceedings by the following year. Shiloh and VCS Properties LLC filed a declaratory judgment action against Comerica but settled and redeemed their real estate. Pursuant to the bankruptcy court's sale order, VCS Properties LLC continues to own the real estate and leases it to the purchaser of VCS's operating assets.

The jury found in favor of plaintiff on its claim of constructive fraudulent transfer and awarded $1,693,000 against VCS Properties LLC, $1,693,000 against Shiloh Industries, Inc., and $1,292,000 against Shiloh Corporation. The district court denied defendants' motion for judgment as a matter of law and alternative motion for a new trial. Defendants timely appealed.

## II.

Defendants argue that plaintiff failed to establish the elements of constructive fraudulent transfer, and thus the district court erred in denying their motion for judgment as a matter of law. We agree. "Judgment as a matter of law is appropriate when viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party." *Tisdale v.*

*Federal Express Corp.*, 415 F.3d 516, 527 (6th Cir. 2005) (internal quotation marks and citations omitted).

The jury rejected plaintiff's claim under Ohio Rev. Code § 1336.04(A)(2)(b) alleging that defendants knew or should have known that plaintiff would become insolvent as a result of the transaction. However, the jury found that defendants engaged in a constructive fraudulent conveyance in violation of Ohio Rev. Code § 1336.04(A)(2)(a). The relevant statutory language states that a "transfer made or an obligation incurred by a debtor is fraudulent" when "the debtor made the transfer or incurred the obligation":

> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and  . . . .
>
> (a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

*Id*. at § 1336.04(A).

On appeal, defendants make two arguments: (1) plaintiff presented no evidence that VCS received less than reasonably equivalent value for the property it transferred, and (2) plaintiff failed to prove that VCS was left with unreasonably small assets after the transaction.

### A.

In order to prevail on its claim for constructive fraudulent transfer, plaintiff must prove that the transfer was made without "receiving an equivalent value in exchange for the transfer or obligation. . . ." Ohio Rev. Code § 1336.04(A)(2). The jury found for plaintiff, answering "no" to the question: "Do you find by a preponderance of the evidence that, at the time of the 2001

transaction, the value of the property received by Plaintiff from VCS Properties, LLC was reasonably equivalent to the value of the property transferred by Plaintiff to VCS Properties, LLC?" The district court ratified the jury's decision, but defendants correctly note that the court did so in a conclusory manner. The district court responded to defendants' arguments by merely stating that "the plaintiff did more than present evidence that, in hindsight, the financial projections turned out to be incorrect. The Court finds that the plaintiff offered evidence from which a reasonable jury could conclude that it was reasonably foreseeable that the plaintiff would fail." The district court offered no support for its conclusion.

Defendants argue that the district court erred by not granting their motion for judgment as a matter of law because "the plaintiff failed to put on *any evidence* that Valley City Steel did not receive reasonably equivalent value for the property it transferred."

Plaintiff's expert, Charles Deutchman, testified at trial that he accepted the $24 million valuation made by Williams & Lipton, the appraisers who reviewed the 2001 transaction.[2] Deutchman not only accepted the valuation agreed to during the transaction, he admitted that he was not qualified to appraise the assets that were transferred. Plaintiff presented no other testimony regarding valuation.

Plaintiff responds by noting that "[v]alue is not measured by an appraisal alone." It argues that valuation is ultimately a fact question for the jury and that the jury "had many sources of

---

[2]Of the $24 million transferred, approximately $12 million was in cash, from the Comerica loans, and the remaining $12 million was in consideration for the 49% membership interest.

evidence" to consider. Plaintiff suggests that the jury could credit the following facts in determining the reasonableness of the valuation: defendants were "able to move [their] debt to the new enterprise, essentially refinancing [their] own debts," Williams & Lipton's appraisal "qualified its findings," and the appraisal did not use as conservative of a valuation as Comerica. However, none of these is a sufficient substitute for presenting affirmative evidence to establish the elements of plaintiff's case.

Defendants did transfer some liabilities to the new entity, but plaintiff does not show that there is anything inherently fraudulent in such an act. In fact, the Williams & Lipton appraisal takes this into consideration by analyzing the $24 million in *net* assets. Plaintiff's own expert testified that the $24 million in net assets was the result of subtracting the approximately $3.6 million of assumed liabilities from the $27 million of total assets that were transferred. Thus, the $24 million in net assets does not reflect any transferred debt.

Plaintiffs also argue that the jury could have discounted the appraisal because Williams & Lipton qualified it with the following statement: "due to the lack of actual sales comparable data, the cost associated with installation and possible disassembly, and the special design and application of the equipment, the values listed could be considered theoretical in nature and are based upon the experience of the appraiser of Williams and Lipton Company . . . ." However, even if the jury rejected the appraisal, which they were entitled to do, plaintiff presented no evidence of its own regarding valuation. Valuation is a factual matter for the jury to resolve, but plaintiff must provide the jury with information upon which to base a verdict. *See Burton v. Triplett*, 2002-Ohio-580, *6

(Ohio Ct. App. 2002) (unpublished) (rejecting plaintiff's valuation argument because the only evidence offered regarding valuation was presented by defendants).[3] Plaintiffs cannot rebut adverse testimony with no testimony; the jury is the factfinder, but plaintiff still carries the burden to present the jury with affirmative evidence.

Additionally, plaintiff suggests that Comerica's use of a more conservative figure reflects its belief "that the Williams and Lipton number is not necessarily indicative of what the assets are really worth." However, Steven Davis, Comerica's loan officer, testified that Comerica based its loans on the "forced liquidation value" of assets, not on their fair market value. (Blue Br. 27.) In this regard, we have ruled that a "reasonably equivalent value" must be evaluated based on the facts known at the time of the transaction. *In re Chomakos*, 69 F.3d 769, 770-71 (6th Cir. 1995). While Comerica is understandably concerned about its ability to recover its loan if conditions change, such analysis does not reflect the valuation of the transaction at the time it was consummated. *See id.* at 771 ("The critical time is when the transfer is 'made.' Neither subsequent depreciation in nor appreciation in value of the consideration affects the . . . question whether reasonable [sic] equivalent value was given." (quoting Collier on Bankruptcy § 548.09 (15th ed. 1984))).

Plaintiff's failure to present evidence challenging the valuation prevents it from establishing that VCS failed to receive "a reasonably equivalent value" as required by Ohio Rev. Code §

---

[3] Plaintiff attempts to distinguish *Burton* based on the "procedural lapses in the introduction of evidence" involved in that case. However, in *Burton* the plaintiff at least attempted to introduce relevant evidence, although that evidence was ultimately determined to be inadmissible. In the instant case, there was no such attempt.

1336.04(A)(2). Because plaintiff was unable to establish this element of constructive fraudulent transfer, this case should not have been submitted to the jury, and defendants were entitled to judgment as a matter of law.

B.


In view of our disposition, we need not address defendants' additional argument that plaintiff failed to present sufficient evidence to establish that the transaction left VCS with "unreasonably small" assets "in relation to the business or transaction" in violation of Ohio Rev. Code § 1336.04(A)(2)(a). Similarly, it is unnecessary for us to decide defendants' issues regarding the calculation of damages or their alternative request for a new trial.

III.

For these reasons, we vacate and remand with instructions for the district court to enter judgment in favor of defendants.